UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATALINA BERDY,

        Plaintiff,                       Case No. 05-70691

v.                                 JUDGE PAUL D. BORMAN
                                 UNITED STATES DISTRICT JUDGE

WAYNE STATE UNIVERSITY,
a Michigan non-profit corporation,
JORGE CHENEA, JOSE CUELLO,
ANDRE FURTADO, and JACK KAY,

        Defendants.
_____/


**ORDER**
**(1) GRANTING DEFENDANT WAYNE STATE UNIVERSITY'S MOTION FOR**
**SUMMARY JUDGMENT ON COUNTS VIII AND X; AND**
**(2) DISMISSING PLAINTIFF'S PENDENT STATE CLAIMS WITHOUT PREJUDICE**

Presently before the Court is Defendant's Wayne State University, Jorge Chinea, Jose Cuello, Andre Furtado, and Jack Kay's (collectively, "Defendants") Motion for Summary Judgment.

This opinion resolves Plaintiff's two remaining Title IX claims against Defendant Wayne State University. The Court grants Defendant Wayne State University's Motion for Summary Judgment on the two federal Title IX claims. The Court also dismisses Plaintiff's pendant state claims against Defendants without prejudice.

**BACKGROUND:**

Plaintiff Katalina Berdy's ("Plaintiff") Amended Complaint contains the following

claims:

I.      Elliott-Larsen Civil Rights Act (Hostile Environment Sexual Harassment) (All
        Defendants Except Jack Kay)
II.     Assault and Battery (Cuello, Chinea, and Furtado)
III.    Gross Negligence (Jack Kay)
IV.     Elliott-Larsen Civil Rights Act (Retaliation) (Wayne State, Cuello, and Jack Kay)
V.      Violation of the Elliott-Larsen Civil Rights Act (Unequal Pay Based on Sex
        Discrimination)
VI.     42 U.S.C. Section 1983 (Chinea, Cuello, and Furtado)
VII.    42 U.S.C. Section 1983 (Wayne State and Jack Kay)
VIII.   Retaliation in Violation of Title IX (Wayne State)
IX.     Breach of Contract (Wayne State)
X.      Violation of Title IX (Wayne State)

Plaintiff stipulated to the dismissal of Counts III, V, VI and VII.

Plaintiff worked as the Assistant Director of the Center for Chicano-Boriqua Studies

("CBS") from the fall of 1999 through September 8, 2005 – the date that she resigned.  (Pl.'s

Resp. 2).  For the last month of her employment, Plaintiff had been on medical leave due to

"stress and depression."  (Pl. Dep. 6).

Plaintiff was hired by Defendant Jose Cuello ("Cuello").  (Pl.'s Resp. 3).  As part of her

employment, she helped Latino students through academic counseling.  (Pl.'s Dep. 34).

Defendant Cuello was the Director of the CBS Program and also Plaintiff's supervisor.  (Pl.'s

Resp. 3).

Plaintiff contends that during the course of her employment, Defendant Cuello sexually

harassed her by repeatedly asking her out on dates – which Plaintiff declined – and telling

Plaintiff "almost every day" that she "needed a real man." (Pl.'s Resp. 5; Mora-Contreras Decl. ¶

20, Pl.'s Resp. Ex. 6).  Plaintiff also states that Defendant Cuello would comment on her breasts

almost every day, including remarking as to the size of her breasts.  She further contends that

Defendant Cuello commented on her hair, shirt, and jeans "on an almost daily basis."  (Pl.'s

Resp. 5).  Plaintiff states that Defendant Cuello would tell her she would look better if she wore

a necklace and a dress and that "she looked nice in tight jeans." (*Id.*).  Plaintiff further contends

that Defendant Cuello touched her in a sexual manner almost every day, would try to hug her

and Plaintiff would try to push him away, and that he rubbed Plaintiff's lower back.  (Mora-

Contreras Decl. ¶¶ 11-14, Pl.'s Resp. Ex. 6).

Plaintiff states that she was afraid of Defendant Cuello and would become embarrassed

and tearful when he touched her and that she "would try to avoid him by keeping her door open

and rushing away from him." (Pl.'s Resp. 5) (citing (Mora-Contreras Decl. ¶¶ 15,16, Pl.'s Resp.

Ex. 6)).

Plaintiff has made several allegations with respect to various aspects of the treatment that

she was subjected to while working with Defendant Cuello.

Concerning Plaintiff's work environment, Plaintiff states that on her first day, Defendant

Cuello informed her that she could not wear perfume.  She further states that Defendant Cuello

posted a calendar in the main office for eight months where Plaintiff worked that depicted

women in bikinis. Defendant Cuello states that the calendar depicted a former student that had

asked him to buy the calendars in support of her modeling career but that he put them on a shelf

and never actually posted the calendar.  (Def. Cuello Dep. 17-19).

Regarding e-mails sent by Defendant Cuello, Plaintiff contends that Defendant Cuello sent her an e-mail that she found sexist and offensive, including jokes related to sexual acts. (Pl.'s Resp. 7).  Plaintiff states that this unwanted sexual harassment from Defendant Cuello continued until early 2003, although Defendants contend that Defendant Cuello resigned his position as director in the beginning of 2002.  Plaintiff states that she reported Defendant Cuello's alleged sexual harassment to Dean Alma Young from the beginning.

After Defendant Cuello resigned, Plaintiff was appointed interim director of CBS, for which she contends she did not receive increased salary as allegedly promised.  In September of 2003, Defendant Dr. Jorge Chinea was appointed as director.  Plaintiff contends that following his appointment, Defendant Dr. Chinea also engaged in acts of harassment, including comments about her appearance and the appearance of others and constantly touching her.  (Pl.'s Resp. 13-14; Defs.' Mem. 5).

In July of 2004, Plaintiff filed a formal complaint through Defendant Wayne State University's ("Wayne State") Office of Equal Opportunity, alleging that she had been harassed by Drs. Chinea and Cuello.  (Defs.' Mem. 5).  Both Dr. Chinea and Dr. Cuello were removed from their offices at CBS by then-Dean of the College of Urban, Labor and Metropolitan Affairs ("CULMA"), George Gelster, and suspended pending an investigation by an independent investigator hired by Wayne State – Claudia Orr ("Orr").  (*Id.*).  During this time, Dr. Furtado was appointed as interim director, a position he held for approximately two months.  Plaintiff states that he touched her and the students and danced with them, which Dr. Furtado has admitted.  (Def. Furtado Dep. 8, Pl.'s Resp. Ex. 11).

4

In November 2004, Orr completed her investigation and determined that Defendants Chinea and Cuello had done nothing wrong.  She noted that the conflict between Plaintiff and Defendants Chinea and Cuello "sprang from contradictory visions for the direction of CBS." (Defs.' Mem. 5).  Following Orr's report, Defendants Chinea and Cuello were reinstated by Defendant Dr. Jack Kay ("Kay"), the newly appointed Dean of CULMA.  (*Id.* at 5-6).

Plaintiff filed the Original Complaint on February 23, 2005.[1]  Plaintiff resigned her employment with CBS in September of 2005.  On September 30, 2005, Plaintiff filed an Amended Complaint.  The Amended Complaint contains numerous counts related to Plaintiff's alleged harassment by Defendants Chinea, Cuello, and Furtado, discrimination claims against Defendants Dr. Kay and Wayne State for failure to investigate and respond to Plaintiff's claims, and a claim against Wayne State for failure to pay proper wages.

## ANALYSIS

### A.    Standard of Review

The Court reviews Defendant's Motion for Summary Judgment under Federal Rule of Civil Procedure 56.  Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.

---

[1] Defendants state that the Complaint was filed on or about June 1, 2005, but February 23, 2005 is the correct date.

5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

Fᴇᴅ. R. Cɪᴠ. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.      Federal Claims under Title IX contained in Count VIII and Count X**

Because Plaintiffs have stipulated to the dismissal of Counts III, V, VI, and VII, the only remaining federal counts in the Amended Complaint are Counts VIII and Count X, which allege violations of Title IX by Defendant Wayne State.

**1.      Count VIII - Retaliation in Violation of Title IX**

Count VIII of Plaintiff's First Amended Complaint alleges that Plaintiff suffered retaliatory treatment for reporting acts of discrimination and harassment by Defendants against various students, in violation of Title IX of the Federal Education Amendments of 1972. 20 U.S.C. §§ 1681-1688.  Plaintiff states that she was denied reclassification, money owed, wages for work performed, and that her complaints were not properly investigated by Wayne State. (Pl.'s Compl. ¶ 114).

In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005), the Supreme Court held that Title IX encompasses a private right of action for retaliation on the basis of sex discrimination.  Interpreting the language of Title IX, the Court found that "[t]he statute is broadly worded; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint." *Id.* at 179.  Therefore, Title IX protection extends to those who complain about discrimination against others. *Id.* at 180.

Although the Sixth Circuit has not addressed the elements for a claim of retaliation under

Title IX, several courts within this circuit have analyzed such claims under the same standards as would apply in a Title VII retaliation claim. *See, e.g., Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998); *Webb v. Wilson County Bd. of Educ.*, No. 05-0214, 2006 U.S. Dist. LEXIS 14613, *26-27 (M.D. Tenn. Mar. 10, 2006). In order to establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that:

(1)     she engaged in activity protected under Title VII;

(2)     the defendant knew that she engaged in the protected activity;

(3)     the defendant subsequently took an adverse, retaliatory action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4)     the protected activity and the adverse action were causally connected.

*Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 736 (6th Cir. 2006).

Defendant contends that Plaintiff has not shown retaliation because her Amended Complaint includes generalized allegations that she reported harassment of students to Wayne State, and because no adverse action was ever taken against her. Plaintiff contends that the adverse action came in the form of denying her reclassification and/or a bonus as part of her move to interim director.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present enough evidence to survive summary judgment on Count VIII. Although Plaintiff argues that Dean Alma Young, who has since passed away,  promised her re-classification; yet none of the documents provided support such a contention. Indeed, the documents evidence that Dean Young did not have the authority to make that decision. In the e-mail from Dean Young to Plaintiff regarding the classification issue, Dean Young stated:

I have found out from Pam that to be reclassified from Assistant Director I to Assistant Director II, you will need to complete a Position Questionnaire Form. . . and then the form has to be sent to Class and Comp for their review and approval.

8

I would suggest that you begin the process ASAP.

(Dean Young E-mail, Defs.' Mot. Ex. H).  Dean Young's statements that others would have to review and approve the form indicates that she recognized and so informed Plaintiff that there were further conditions precedent to relating to the reclassification of Plaintiff.  Plaintiff does not contest that she received that definitive email from Dean Young.  Nor does Plaintiff contest the fact that she did not file the appropriate requests with the Employment Service Department.

The Court also notes that Defendant Jack Kay testified that he did not promise Plaintiff a bonus and that he examined the personnel files and was unable to find any promise of a reclassification, which he stated is handled through "employment services" and not by his office personally.  (Kay Dep. 9, Defs.' Mot. Ex. 4).  Defendant Kay states that he informed Plaintiff that she would have to go through the process of filing for reclassification and that he "heard nothing more in terms of any formal request going to personnel services or employment services for such reclassification."  (*Id.*).

There is no evidence that Plaintiff ever filed the necessary documents for her classification.  Indeed, Plaintiff never went to the Employment Services Department regarding the reclassification.  Since Plaintiff cannot produce any of the necessary documentation in support of her claim, the Court finds that  a reasonable jury could not find that Plaintiff was entitled to any reclassification and/or a bonus. Thus, no adverse action was taken against Plaintiff, and the Court finds that summary judgment is proper on Plaintiff's Title IX claim of retaliation.

Moreover, even if Plaintiff could show that Defendant Wayne State did take adverse action against her, Plaintiff has not shown how her failure to receive the reclassification/bonus

9

was connected to her reporting instances of sexual harassment on the part of Defendants.

Accordingly, the Court finds that Defendants are entitled to summary judgment on Count VIII,

which alleges a violation of Title IX based on retaliation.

**2.      Count X - Violation of Title IX**

Plaintiff alleges in Count X that she suffered harm as a result of sexual harassment

experienced by herself and others who came in contact with Defendants.  The Supreme Court

has held that a private right of action exists under Title IX for a school's deliberate indifference

to a teacher's sexual harassment.  *Gebser v. Lago Vista Indep. School Dist.*, 524 U.S. 274,

290-291 (1998):

> We conclude that damages may not be recovered in those circumstances unless an
> official of the school district who at a minimum has authority to institute
> corrective measures on the district's behalf has actual notice of, and is
> deliberately indifferent to, the teacher's misconduct.

*Id.* at 277.

Although Plaintiff is not a student, the statute states that "[n]o person in the United States

shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be

subjected to discrimination under any education program or activity receiving Federal financial

assistance." 20 U.S.C. § 1681(a).  Thus, this statute protects persons such as Plaintiff who are

employed by a covered program.

10

To show deliberate indifference under Title IX, Defendant must 1) have actual knowledge of discrimination and 2) fail to adequately respond in such a way that the response amounts to deliberate indifference to discrimination.  *Id.*; *Gebser*, 524 U.S. at 277.  The Supreme Court has said that "the deliberate indifference must, at a minimum, cause [the plaintiff] to undergo harassment or make them liable or vulnerable to it."  *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999) (internal citations omitted).  Deliberate indifference is a high standard that amounts to "an official decision by the recipient not to remedy the violation." *Gebser*, 524 U.S. at 290.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that Defendants did not act with deliberate indifference to Plaintiff's complaints of sexual harassment. The parties do not dispute that Wayne State was on notice of Plaintiff's complaints of harassment. However, the record shows that Wayne State hired an independent investigator, who was also female, to investigate Plaintiffs' allegations of harassment.  The investigator, Claudia Orr, found no wrongdoing on the part of Defendants Cuello and Chinea.[2]  (*See* Report of Independent Investigator, Defs.' Mot. Ex. 6).  As a result of Claudia Orr's findings, Defendants Cuello and Chinea were reinstated shortly thereafter.

That the outside investigator hired by Wayne State reached a conclusion that did not support Plaintiff's claims and does not support an allegation of deliberate indifference on the part of Defendants under the high standard set forth by the Supreme Court.  Accordingly, the Court holds that Defendant Wayne State is entitled to summary judgment on Plaintiff's Count X.

---

[2]  Plaintiff notes in her response that she reported alleged harassment on the part of Defendants Cuello and Chinea only, and does not note any specific allegations with respect to Defendant Furtado.

11

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant Wayne State's Motion for Summary Judgment as to Federal law Title IX Counts VIII and X of Plaintiff's Amended Complaint.  The remaining counts allege claims under state law.  The Court, in the exercise of its discretion, dismisses the pendent state claims.

**SO ORDERED.**

 s/Paul D. Borman                         
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2006